UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARNELL HUNNICUTT | : | CIVIL ACTION NO. 3:07CV1422 (JCH) |
| | : | |
| v. | : | |
| | : | |
| THERESA LANTZ, ET AL., | : | AUGUST 18, 2010 |

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

  The defendants submit their proposed findings of fact and conclusions of law in advance of the trial scheduled in this matter for August 30, 2010. The defendants reserve the right to supplement their proposed findings of fact and conclusions of law at the conclusion of the trial in light of the evidence to be presented.

  **PROPOSED FINDINGS OF FACT**

  1. The plaintiff, Carnell Hunnicutt, is a sentenced inmate currently in the custody of the Commissioner of the Department of Correction, and at all relevant times, has been housed in the administrative segregation program at the Northern Correctional Institution.

  2. The remaining defendants are: Leo Arnone (in his official capacity as Commissioner of the Department of Correction), retired NCI Warden Jeff McGill, retired DOC District Administrator Wayne Choinski, Correctional Officer Luis Colon and DOC Captain Mark Donahue.

  3. The plaintiff has a lengthy history of drawing cartoons. While many are satirical in nature, and may be subject to First Amendment protection, still many others depict graphic scenes of violence and obscene sexual behaviors. Often, the plaintiff draws himself and staff at his correctional facility interacting in ways that depict plaintiff as dominant, authoritative and in

a positive light (at least from the plaintiff's perspective) while denigrating staff and others who draw his ire by accentuating the race, gender, sexual orientation and even physical attributes. Testimony of Hunnicutt, McGill, Choinski, Colon, Donahue, Powers and Rodriguez.

    4. In addition to targeting staff, the plaintiff draws cartoons of persons outside of the corrections system, such as judges, attorneys and others who draw his ire, in similarly demeaning fashion, accentuating the race, gender, sexual orientation and even physical attributes of his subjects. Testimony of Hunnicutt, McGill, Choinski, Colon, Donahue, Powers and Rodriguez.

    5. The plaintiff has drawn himself engaging in sexual acts with staff, and staff engaging in sexual acts with each other. Testimony of Hunnicutt, McGill, Choinski, Colon, Donahue, Powers and Rodriguez.

    6. Of all of the cartoons he has drawn, plaintiff will concede that only one, depicting a female attorney breastfeeding her newborn son drawn as the devil, was sufficiently offensive to warrant discipline. Testimony of Hunnicutt.

    7. Plaintiff's other drawings have included a life-size, nude drawing of a female DOC employee drawn on the wall of his cell. To remove the drawing, DOC officials were required to sandblast the wall. In response, plaintiff re-drew the sexually offensive mural. Testimony of Hunnicutt, Colon, Donahue and Rodriguez.

    8. The cartoon that is the subject of this lawsuit was drawn by the plaintiff in March 2007. It depicts a local, female radio personality having sex with the plaintiff and his cellmate, culminating with both inmates ejaculating on her face.

    9. The plaintiff has never had any direct communication with the subject of the cartoon. Testimony of Hunnicutt.

10. Although the plaintiff claims to have drawn cartoons for the radio personality in the past, the plaintiff will testify that those drawings took the form of birthday cards and other similar communications and were sent by other inmates, not the plaintiff.  Testimony of Hunnicutt.

11. The drawing was accompanied by a letter written by the plaintiff's cellmate and enclosed in an envelope depicting cartoon characters.  Testimony of Hunnicutt, McGill, Choinski, Colon, Donahue, Powers and Rodriguez.

12. The plaintiff's attempt to mail a letter written by his cellmate is a violation of DOC administrative directives governing inmate mail.  Testimony of Hunnicutt, McGill, Choinski, Colon, Donahue, Powers and Rodriguez.

13. In August 2002, the Department of Correction and more than forty of its supervisors were named in a class action lawsuit alleging, inter alia, that the agency created and/or permitted a sexually harassing, hostile work environment.  Included among the allegations in that action were claims that the agency did not appropriately take action to protect females from sexually inappropriate inmate behaviors.  Testimony of McGill and Choinski; Judicial Notice of Complaint in Allen v. Department of Correction, No. 3:02CV1370 (WIG).

14. Although the original cartoon that is the subject of this action has been confiscated by DOC personnel, both the plaintiff and his attorneys have been provided with copies of the cartoon.  Testimony of Hunnicutt.

15. The plaintiff has not ever attempted to send the subject cartoon to anyone other than the radio personality depicted in the drawing.  Testimony of Hunnicutt, McGill, Choinski, Colon, Donahue, Powers and Rodriguez.

16. The plaintiff has an extensive disciplinary history that includes sanctions for threats and insulting language and behavior. Plaintiff has either forfeited or lost the opportunity to earn more than four years of good time, thereby extending his sentence by that length of time. Testimony of Hunnicutt, McGill, Choinski.

**PROPOSED CONCLUSIONS OF LAW**

1. As a prisoner, the plaintiff "retains those First Amendment rights that are not inconsistent with his status as prisoner or with the legitimate penological objectives of Corrections and forfeits others. An inmate's free speech rights must be balanced against the state's legitimate interest in confining prisoners to deter crime, to protect society by quarantining criminal offenders for a period during which rehabilitative procedures can be applied, and to maintain the internal security of penal institutions." Pell v. Procunier, 417 U.S. 817, 818 (1974); Hunnicutt v. Faneuff, 2001 Conn. Super. LEXIS 3603 (Bryant, J.).

2. "Restricting the plaintiff's right to produce and maintain [violent and sexually abusive] material does not impermissibly restrict his First Amendment speech rights. The reasonableness of corrections views of the detrimental effects of the plaintiff's speech is inescapable and are sufficiently compelling to outweigh and prevail" against plaintiff's claims. Hunnicutt, Id.

3. First Amendment guarantees must be applied in light of the special characteristics of the environment in which they are exercised. Procunier v. Martinez, 416 U.S. 396, 410 (1974). Overruled on other grounds as to incoming mail, Thornburgh v. Abbott, 490 U.S. 401 (1989).

4. "One of the primary functions of government is the preservation of societal order through enforcement of the criminal law, and the maintenance of penal institutions is an essential part of that task." Id.

4

5. Prison officials may restrict inmate outgoing mail upon showing (1) that the restrictions "further an important or substantial governmental interest unrelated to the suppression of expression" such as "interests of security, order and rehabilitation"; and (2) "the limitation must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Id.

6. With respect to the application of the standard, courts must afford prison officials "some latitiude in anticipating the probable consequences of allowing speech in a prison environment." Id.

7. Plaintiff's cartoon does not advance any societal, political, religious, racial or other viewpoint. Indeed, the probable consequence of allowing the cartoon to be mailed to its intended recipient is that it would be offensive to that recipient and anyone else who would view the cartoon.

8. Neither the United States Supreme Court nor the United States Court of Appeals for the Second Circuit has ever held that prison officials may be subject to claims for money damages for their refusal to mail sexually explicit inmate cartoons or correspondence to third parties outside of the prison setting.

9. The defendants are entitled to qualified immunity. The plaintiff's assertion of a First Amendment right to mail the cartoon at issue to an unsuspecting person is not clearly established. Pearson v. Callahan, 129 S.Ct. 808 (2009); Redd v. Wright, 597 F.3d 532 (2010). Unlike the facial challenge to regulations at issue in Martinez, the as applied challenge in the present action does not relate to correspondence regarding the viewpoints of the plaintiff. Martinez rejected regulations that permitted prison officials to censor correspondence in which inmates "unduly complain" or "magnify grievances" or express "inflammatory political, racial,

religious or other views" and matters deemed by correctional officials to be "defamatory" or "otherwise inappropriate." Martinez, 416 U.S. at 415.

    10.  In order to determine whether the specific right asserted by the plaintiff was "clearly established" the court should consider (1) whether the right was defined with reasonable specificity, (2) whether the decisions of the United States Supreme Court or the Second Circuit support the claimed existence of such a right; and (3) whether, under the law existing at the time of the alleged violation, a reasonable government official would have understood that his acts were unlawful.  Jermosen v. Smith, 945 F.2d 547 (2d Cir. 1991).  There are no such decisions addressing the rights of an inmate to mail sexually explicit drawings to an unsuspecting third party.

                                      DEFENDANTS
                                      Theresa Lantz, et al.

                                      RICHARD BLUMENTHAL
                                      ATTORNEY GENERAL

BY:           /s/                       
      Terrence M. O'Neill
      Assistant Attorney General
      Federal Bar No. ct10835
      110 Sherman Street
      Hartford, CT  06105
      Tel.: (860) 808-5450
      Fax: (860) 808-5591
      Terrence.oneill@ct.gov

**CERTIFICATION**

I hereby certify that on this date, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/_____
Terrence M. O'Neill
Assistant Attorney General